**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T.L.,<br>4986 Tulip Drive<br>Akron, Ohio 44333 | ) ) ) ) | CASE NO.<br><br>JUDGE |
| -and- | ) ) ) | |
| DAVID AND CINDY LI, individually<br>and as the Personal Representative<br>and Agent of T.L.,<br>4986 Tulip Drive<br>Akron, Ohio 44333 | ) ) ) ) ) ) | **COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| REVERE LOCAL SCHOOLS<br>BOARD OF EDUCATION<br>3496 Everett Road<br>Richfield, Ohio 44286 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiffs, T.L., David Li, and Cynthia Li, individually and as personal representative and

agent of T.L., for their *Complaint* against Defendant, Revere Local Schools Board of Education

("Revere"), states as follows:

## INTRODUCTION

1.      Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) ("Section 504")

and Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131-50) ("ADA") forbid

school districts from discriminating against disabled students and denying them a free,

appropriate public education ("FAPE").

2.      T.L. ("Plaintiff") was a disabled student who attended Revere. Revere

discriminated against Plaintiff while he was a student, which denied him FAPE. Revere's

discrimination includes, but is not limited to: (a) failing to provide Plaintiff with an Individualized Education Program ("IEP") during the 2016-2017 school year despite his right and entitlement to an IEP; (b) failing to educate Plaintiff in the least restrictive environment; (c) failing to provide access to programs and services comparable to those provided to students without disabilities; and (d) by failing to implement appropriate IEPs in later years.

3.     Revere's discriminatory actions rise to the level of bad faith and/or gross misjudgment sufficient to establish discriminatory intent under Section 504 and the ADA. Accordingly, Plaintiff seeks compensatory damages, attorney's fees, and other relief for Revere's violation of Section 504 and ADA.

4.     Revere's tortious and discriminatory acts, committed under color of state law, also deprived Plaintiff of the rights, privileges, and immunities secured by the United States Constitution, including, without limitation, his right to a FAPE under the Fourteenth Amendment. Therefore, Plaintiff seeks compensatory damages, punitive damages, attorney's fees and costs and any other relief that is equitable and just pursuant 42 U.S.C. § 1983 ("Section 1983").

5.     Finally, as a result of Revere's tortious and discriminatory acts, committed in violation of Section 504, ADA, and Section 1983, David and Cynthia Li (the "Lis") bring a derivative claim against Revere for the loss of filial consortium, including damages for their pecuniary costs and related services as well as lost society, companionship, comfort, love, solace, and other non-economic harm.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331, which provides for original jurisdiction over civil suits arising under the Constitution, laws, or treaties of the United States, including Section 504, the ADA, and Section 1983.

7.     Personal jurisdiction and venue are proper because the Defendants are located in this District and because the events, acts, and omissions giving rise to Plaintiff's Complaint occurred in this District. 28 U.S.C. § 1391(b).

8.     The Court has supplemental jurisdiction over the Lis' state-law claim pursuant to 28 U.S.C. § 1367.

## PARTIES

9.     T.L. is an individual person who resides in Akron, Summit County, Ohio. T.L. attended school in Revere and has standing to pursue claims as the real party in interest.

10.     Cynthia Li is the personal representative and agent of T.L. with the authority to litigate this matter on T.L.'s behalf pursuant to a lawfully executed power of attorney, attached hereto and incorporated herein by reference as **Plaintiff's Exhibit 1**.

11.     David and Cynthia Li are individual persons who are T.L.'s parents and reside in Akron, Summit County, Ohio.

12.     Revere is a public entity, which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws and policies, regulations, and procedures in effect for Revere, including special education and related services, and is therefore, a "Local Educational Agency" or "LEA" as that term is defined in the IDEA. Revere is a political subdivision under the laws of the State of Ohio. Revere and each of its component schools receive federal financial assistance pursuant to Part B of the IDEA and Section 504.

## PROCEDURAL BACKGROUND

### The First Due Process Action

13.     Plaintiff filed a due process complaint against Revere on or about March 6, 2018 under the IDEA and related Ohio laws referred to as Case No. SE-3575-2018 (the "First Due Process Action"). A true and accurate copy of the due process complaint filed in the Due Process Action is referenced and incorporated herein as **Plaintiff's Exhibit 2.**

14.     The First Due Process Action concerned, *inter alia,* Revere's failure to: (a) stop Plaintiff's bullying, which caused and/or exacerbated Plaintiff's disability; (b) identify Plaintiff as a child with a disability under the IDEA; (c) to provide Plaintiff with a Manifestation Determination Review ("MDR") before expelling him as required by the IDEA; and (d) provide Plaintiff with FAPE under the IDEA.

15.     On or about May 1, 2019, Independent Hearing Officer ("IHO") Irene McMullen issued a decision in the First Due Process Action. While IHO McMullen found that Plaintiff was a student with a disability under the IDEA, IHO McMullen concluded that Revere satisfied the due process requirements of the IDEA and did not deprive Plaintiff of FAPE. A true and accurate copy of which is attached hereto and expressly incorporated herein by reference as **Plaintiff's Exhibit 3.**

16.     Plaintiff appealed IHO McMullen's decision to State Level Review Officer ("SLRO") Monica Bohlen. SLRO Bohlen affirmed the decision of IHO McMullen on or about December 13, 2019. A true and accurate copy of which is attached hereto and expressly incorporated herein by reference as **Plaintiff's Exhibit 4**.

17.     On or about March 12, 2020, Plaintiff commenced a lawsuit in the U.S. District Court for the Northern District of Ohio captioned *David Li, et al. v. Revere Local School*

*District, et al.,* Case No. 5:20-cv-00552 ("First Lawsuit").

18.     The Complaint filed in the First Lawsuit included, *inter alia,* an IDEA appeal of IHO McMullen's decision in the First Due Process Action as well as the assertion of separate Section 504 and ADA claims relating to the issues raised in the First Due Process Action, as described in Paragraph 11, *supra*.

19.     Plaintiff could not file the Section 504 and ADA claims in federal court pertaining to the issues in the First Due Process Action until the companion IDEA claim was administratively exhausted before IHO McMullen and SLRO Bohlen. *See,* 20 U.S.C. § 1415(l).

20.     On or about March 31, 2021, the District Court dismissed the First Lawsuit upon Revere's Motion to Dismiss. Plaintiff timely appealed the dismissal of the First Lawsuit to the United States Court of Appeals for the Sixth Circuit where it is currently pending.

**The Second Due Process Action**

21.     On or about September 13, 2019, Plaintiff filed a second Due Process Complaint against Revere under the IDEA and Ohio law referred to as Case No. SE-3806-2019 (the "Second Due Process Action"). A true and accurate copy of the due process complaint filed in the Due Process Action is referenced and incorporated herein as **Plaintiff's Exhibit 5**.

22.     The Second Due Process Action concerned Revere's failure to: (a) provide Plaintiff with a timely and legally compliant IEP for the 2016-2017 school year; (b) provide Plaintiff with legally compliant IEPs in subsequent school years; (c) educate Plaintiff in the least restrictive environment; and (d) provide Plaintiff with certain IDEA procedural safeguards.

23.     On or about August 26, 2020, IHO Matthew Rohrbacher issued a decision in the Second Due Process Action. While IHO Rohrbacher found that Revere failed to timely provide Plaintiff with an IEP in the 2016-2017 school year, IHO Rohrbacher found that this procedural

violation did not cause substantive harm to the Plaintiff. IHO Rohrbacher further rejected Plaintiff's other due process claims, concluding that Revere did not deprive Plaintiff of FAPE. A true and accurate copy of which is attached hereto and expressly incorporated herein by reference as **Plaintiff's Exhibit 6**.

24.     Plaintiff appealed IHO Rohrbacher's decision to SLRO Robert Mues. SLRO Mues affirmed the decision of IHO Rohrbacher on or about February 11, 20221. A true and accurate copy of which is attached hereto and expressly incorporated herein by reference as **Plaintiff's Exhibit 7.**

25.     On or about May 12, 2021, Plaintiff commenced a lawsuit in the U.S. District Court for the Northern District of Ohio captioned *Cindy Li, as personal representative and agent of T.L., the real party in interest, v. Revere Local Schools Board of Education,* Case No. 5:21-cv-00983 ("Second Lawsuit").

26.     The Complaint filed in the Second Lawsuit included, *inter alia,* an IDEA appeal of IHO Rohrbacher's decision in the Second Due Process Action as well as the assertion of separate Section 504 and ADA claims relating to the issues raised in the Second Due Process Action, as described in Paragraph 20, *supra*.

27.     Plaintiff could not file the Section 504 and ADA claims in federal court pertaining to the issues in the Second Due Process Action until the IDEA claim was administratively exhausted before IHO Rohrbacher and SLRO Mues. *See,* 20 U.S.C. § 1415(l).

28.     The District Court dismissed the Second Lawsuit for a lack of subject matter jurisdiction due to a purported lack of standing. The dismissal was without prejudice. The Section 504 and ADA claims are being refiled in this action with the additional Section 1983 and loss of consortium claims.

**Administrative Exhaustion**

29.     Although Section 504 and the ADA do not contain an administrative exhaustion requirement, if a claimant is seeking relief under these statutes that is also available under the IDEA, then the claimant must exhaust the IDEA's administrative procedures to the same extent as would be required had the action been brought under the IDEA. *See,* 20 U.S.C. § 1415(l)("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], [Section 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.").

30.     Because Plaintiff's Section 504 and ADA claims allege a denial of FAPE, Plaintiff was required to exhaust his administrative remedies by commencing an administrative action seeking relief under the IDEA against Revere before the Ohio Department of Education ("ODE").

31.     As discussed *supra*, Plaintiff filed the Second Due Process Action with ODE. Plaintiff litigated his claims before IHO Rohrbacher and SLRO Mues pursuant to 20 U.S.C. § 1415(f) and 1415(g), which resulted in a final decision.

32.     In obtaining a final decision from ODE, Plaintiff exhausted all administrative remedies as to his IDEA, Section 504, and ADA claims.

## RELEVANT FACTUAL BACKGROUND

**Revere Discriminated Against Plaintiff By Failing To Provide Him With An IEP For More Than A Year After Determining That Plaintiff Was Entitled to Special Education Services.**

33.     Plaintiff was an excellent student at Revere. However, Plaintiff suffered from severe anxiety and depression. These conditions were substantially aggravated by the bullying that Plaintiff received from his peers.

34.     On August 19, 2016, Revere conducted an Evaluation Team Report ("ETR") meeting to evaluate whether Plaintiff was a disabled student entitled to special education and other related services.

35.     Through the ETR process, Revere confirmed that Plaintiff suffered from severe anxiety, depression, and post-traumatic stress disorder. Ultimately, the ETR team diagnosed Plaintiff with "emotional disturbance," which was a qualifying disability under the IDEA. Plaintiff's diagnosis of emotional disturbance also qualified as a disability under Section 504 because this condition substantially limited Plaintiff's ability to learn as compared to non-disabled peers. A true and accurate copy of the ETR is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit 8**.

36.     As a result of the ETR, Revere was legally required to provide Plaintiff with special education services under the IDEA and Section 504.

37.     Under the IDEA, Revere had thirty (30) days to implement an IEP for Plaintiff (i.e. on or before September 18, 2016).

38.     Despite the IDEA's timing requirements for the implementation of an IEP, Revere prepared an IEP for Plaintiff in 2016 ***but did not implement it*** until September 27, 2017 (the "2017 IEP") (a delay of 374 days). A true and accurate copy of the 2017 IEP is attached hereto

and incorporated herein by reference as **Plaintiff's Exhibit 9**.

39.    While Revere implemented a Section 504 plan for Plaintiff beginning in 2016, a Section 504 plan is not a substitute for an IEP because they have different purposes. Specifically, a Section 504 plan is implemented to ensure that a disabled child has the same access to the learning environment as their non-impaired peers. In contrast, an IEP is implemented to ensure that a child makes meaningful education progress given their disability.

40.    Section 504 requires Revere to provide a FAPE to Plaintiff. Under Section 504, FAPE consists of the provision of regular or special education and related aids and services designed to meet the individual educational needs of a disabled student as adequately as the needs of non-disabled students.

41.    By failing to provide an IEP to Plaintiff for more than a year, despite his qualifying disability and the Lis' consent to an IEP, Revere deprived Plaintiff of special education services necessary to meet his educational needs as adequately as the needs of non-disabled students.

42.    Revere's failure to implement an IEP is direct evidence of a denial of FAPE. Plaintiff was denied meaningful access to the benefits of an IEP for more than a year, which is direct evidence of bad faith and/or gross misjudgment. Therefore, Revere discriminated against Plaintiff in violation of Section 504 and the ADA.

### Revere Discriminated Against Plaintiff When It Failed To Provide IEPs To Plaintiff That Met His Individual Education Needs

43.    Revere implemented an IEP for Plaintiff beginning in September 2017. This IEP as well as subsequent IEPS were procedurally and substantively deficient, not legally compliant, and deprived Plaintiff of a FAPE. Specifically, the IEPs implemented by Revere failed, without limitation, to: (a) address Plaintiff's special education needs; (b) provide Plaintiff with viable

extracurricular activities; (c) provide Plaintiff with necessary transition services; (d) provide Plaintiff with adequate and necessary transportation services; (e) ensure that Plaintiff's IEP team consisted of the proper team members; (f) ensure that all necessary assessments were completed; (g) ensure that Plaintiff received extended school year services; and (h) to provide Plaintiff's Parents with special education documentation in their native language of Mandarin.

44.     Plaintiff's parents had significant concerns with the IEPs developed and actually implemented for Plaintiff. Plaintiff's parents' concerns were communicated to Revere many times. Revere deliberately ignored Plaintiff's parents' concerns and refused many requests they had with respect to Plaintiffs' educational and disability needs.

45.     Revere discriminated against Plaintiff by refusing to provide him with legally sufficient IEPs, which denied Plaintiff meaningful access to the benefits of an IEP and a public education for which he was entitled.

46.     As a recipient of federal funds, Revere had a duty to comply with the provisions of the IDEA and Section 504 to implement IEPs that met Plaintiff's individual education needs and to ensure that Plaintiff's needs were being met at the same level as the needs of non-disabled students.

47.     By implementing deficient IEPs that failed to meet the requirements of Section 504 and the IDEA, Revere discriminated against Plaintiff and failed to provide him with a FAPE. Moreover, Revere's refusal to provide certain special education, extracurricular, and other services, which were requested by Plaintiff's parents and required by law, constitutes bad faith and/or gross misjudgment to establish discriminatory intent under Section 504 and the ADA.

10

**Revere Discriminated Against Plaintiff By Refusing To Provide Educational Services
In The Least Restrictive Environment**

48.     The IDEA and Section 504 require that services for students with disabilities be provided in the least restrictive environment. This requirement ensures that disabled students are educated, to the maximum extent appropriate, with students who do not have disabilities.

49.     In the spring of 2016, after Plaintiff was expelled, the Lis requested documentation from Revere regarding Plaintiff's ninth grade course selection.

50.     Revere did not provide Plaintiff the right to attend classes in person, but instead offered Plaintiff the right to attend classes online.

51.     The Lis did not agree with Plaintiff attending online classes because these classes were not a part of the advanced curriculum offered by Revere. As a result, Plaintiff began applying to private schools for the 2016-2017 school year.

52.     Upon information and belief, Revere prevented its teachers and administrators from issuing recommendation letters and/or filling out forms necessary for Plaintiff's private school applications. Revere only lifted these restrictions once the Lis' former counsel intervened.

53.     Plaintiff was accepted at Western Reserve Academy ("WRA") on June 14, 2016. A true and accurate copy of Plaintiff's Acceptance Letter is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit 10**.

54.     On June 28, 2016, however, WRA rescinded its letter of acceptance to Plaintiff. A true and accurate copy of WRA's email is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit 11**.

55.     Plaintiff discovered that Revere sent educational records and other materials to WRA without the authorization of Plaintiff's parents in violation of 34 CFR § 300.622(b)(3). Revere also failed to: (a) notify the Lis that it submitted records to WRA; (b) provide copies of

11

the records submitted to WRA to the Lis upon their request; or (c) provide the Lis with a hearing regarding the contents of the educational records before they were submitted to WRA, all in violation of 34 CFR § 99.34. Therefore, Revere had no right to send records to WRA.

56.     Revere's interference with Plaintiff's opportunity to attend WRA precluded Plaintiff from being educated in the least restrictive environment. This left Plaintiff with very few options for the 2016-2017 school year.

57.     Around this same time, Plaintiff had been evaluated by Revere's psychologist, Dr. DePolo to determine whether he was a student with a disability.

58.     Dr. DePolo issued an Independent Educational Evaluation ("IEE") identifying Plaintiff as a student with a disability, entitling him to services under the IDEA and Section 504, as well as providing a recommendation as to Plaintiff's proper educational placement.

59.     Specifically, Dr. DePolo recommended that Plaintiff be placed in a (a) highly structured, appropriately supervised education setting, (b) with a rigorous general education honors program, (3) with same-age peers to support Plaintiff's development, and (4) in a new environment to help Plaintiff overcome his social anxiety.

60.     Based on Dr. DePolo's diagnosis that Plaintiff suffered from major depressive disorder and post-traumatic stress disorder, Dr. DePolo was "very concerned" about Plaintiff returning to Revere given that "he had such a difficult experience [there]." Moreover, Dr. DePolo stated that she did not believe that Plaintiff would "make gains psychologically going into that environment every day." Therefore, Dr. DePolo did not believe that Plaintiff could return to Revere.

61.     Dr. DePolo recommended that Plaintiff attend WRA or another similar institution as she believed these types of programs were the least restrictive environment for Plaintiff's specific academic and special education needs.

62.     Despite initially blocking Plaintiff's return to Revere for the 2016-2017 school year, Revere offered Plaintiff the opportunity to come back to school the next fall. This option was not accepted by the Lis given Dr. DePolo's recommendation against Plaintiff returning to Revere.

63.     Given the timing of WRA's rejection and Dr. DePolo's recommendation against returning to Revere, Plaintiff did not have many options for the upcoming school year.

64.     On August 12, 2016, Revere's legal counsel notified the Lis' counsel about attending the University of Akron College Credit Plus ("CCP") program.

65.     The CCP program was academically challenging but Dr. DePolo had concerns about whether the CCP program was the least restrictive environment for Plaintiff.

66.     Dr. DePolo was specifically concerned about Plaintiff's age given that he would be attending classes with adults beginning when he was only 13-years old.

67.     Dr. DePolo did not believe that the CCP program would provide Plaintiff with opportunities to engage with other students or to participate in on-campus social experiences.

68.     The Lis objected to Plaintiff's attendance at the CCP program given his age. However, the CCP program was the only option provided by Revere that had a rigorous academic curriculum. Therefore, the Lis consented to the CCP program with the understanding that Plaintiff would receive additional special education services pursuant to an IEP and Section 504 Plan.

13

69.     Plaintiff was accepted into the CCP program and was set to begin classes in September 2016.

70.     On September 2, 2016, however, Revere surprised Plaintiffs by notifying them that Plaintiff would be attending Perspectives Academy ("Perspectives"). Notwithstanding the predetermination issues surrounding Revere's unilateral selection of Perspectives, Revere threatened to withhold transportation services unless he attended Perspectives.

71.     The Lis visited Perspectives but determined, in consultation with Dr. DePolo, that Perspectives was not an appropriate academic environment for Plaintiff.

72.     Revere represented to the Lis that Dr. DePolo signed off on the assignment of Plaintiff to Perspectives. However, Dr. DePolo vehemently refuted Revere's representation because Perspectives was far from Plaintiff's least restrictive environment as it was an online program designed for troubled students who could not be educated in a normal classroom.

73.     The CCP program was also not ideal, however, because it required Plaintiff to mix with college-age students beginning when he was 13-years old.

74.     Dr. DePolo later observed that Plaintiff, due to his age and disabilities (i.e. social anxiety, severe depression, and PTSD), did not make friends in the CCP program and struggled to develop relationships with his teachers. Plaintiff was also deprived of meaningful social experiences and interactions while on campus.

75.     Plaintiff was deprived of access to meaningful extracurricular, social, and other activities that he would have experienced had he attended school with students his own age, especially as compared to non-disabled students attending Revere.

76.     34 CFR § 300.107 expressly states that schools must provide nonacademic and extracurricular services in the manner necessary to afford disabled children with an equal

14

opportunity for participation in those services and activities. Nonacademic and extracurricular services and activities include: (a) counseling services; (b) athletics; (c) transportation; (d) health services; (e) recreational activities; and (f) special interest groups or clubs.

77.    34 CFR § 300.108 also states that schools must make arrangements so that disabled students attending classes in a separate facility be provided with appropriate physical education services.

78.    34 CFR § 300.117 also makes clear that schools, in providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services set forth in § 300.107 above, must ensure that disabled children are given opportunity to participate with nondisabled children to the maximum extent appropriate.

79.    Plaintiff was a child with anxiety, depression, and PTSD brought on in part by severe bullying while attending Revere. As a result of these issues, Plaintiff struggled with social skills and interacting with his peers.

80.    Dr. DePolo recommended that Plaintiff attend school in a new setting with same-age peers to support Plaintiff's special needs and development. Yet, Revere placed Plaintiff in the CCP program with college-age adults when he was still a child.

81.    Given the environment and the age of the other students, Plaintiff had no opportunity to participate in nonacademic and extracurricular services with his peers as required by § 300.107, § 300.108, and § 300.117 above.

82.    For example, Plaintiff could not use the gym on the University of Akron's campus because he had to be at least 18-years old. Even for physical education classes, Plaintiff had to be 17-years old to participate. Therefore, Plaintiff had no access to any physical education services while attending the CCP Program.

83.     The Lis had to pay out-of-pocket for a range of nonacademic and extracurricular services on behalf of Plaintiff to compensate for the lack of services provided by Revere.

84.     Revere's willful interference with Plaintiff's opportunity to attend WRA deprived Plaintiff of his opportunity to be educated in the least restrictive environment.

85.     Revere deprived Plaintiff of an opportunity to participate in classroom, extracurricular, and social activities with non-disabled students of his own age by limiting Plaintiff's options to Plaintiff to attend the CCP program.

86.     By failing to educate Plaintiff in the least restrictive environment, Revere denied Plaintiff a FAPE. Revere's actions rises to the level of bad faith and/or gross misjudgment in violation Section 504 and the ADA.

## <u>COUNT ONE</u>
### (Violations of Section 504 – Plaintiff v. Revere)

87.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if set forth herein.

88.     Section 504 provides, in pertinent part: "[n]o otherwise qualified individual with a disability...shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

89.     Plaintiff was diagnosed with anxiety, depression, and PTSD (by Dr. DePolo) and determined (by the IEP team) to have "emotional disturbance[,]" which is a qualifying disability under the IDEA. Plaintiff's conditions also qualified him as a disabled student under Section 504 because these conditions substantially limited Plaintiff's ability to learn as compared to non-disabled peers.

90.     Plaintiff is "otherwise qualified" in that he was able to meet all Revere's

16

requirements in spite of his disability, with reasonable accommodation.

91.     Revere is a recipient of federal funds. Therefore, it must provide educational services in a manner which does not discriminate against people with handicaps.

92.     Through Revere's acts and omissions, as described above, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination while attending school at Revere all due to his disability.

93.     Revere's actions and omissions, described in detail herein, were committed in bad faith and/or with gross misjudgment.

94.     As a result of Revere's misconduct, Plaintiff suffered damages. Plaintiff seeks an award of compensatory damages, the recovery of reasonable attorney's fees, costs, and expenses, as well as such other relief the Court deems appropriate.

## COUNT TWO
### (Violations of the ADA – Plaintiff v. Revere)

95.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if set forth herein.

96.     The ADA prohibits discrimination by state and local governments and provides, in part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

97.     Plaintiff was diagnosed with anxiety, depression, and PTSD (by Dr. DePolo) and determined (by the IEP team) to have "emotional disturbance, which is a qualifying disability under the IDEA. Plaintiff's conditions also qualified him as a disabled student under Section 504 because these conditions substantially limited Plaintiff's ability to learn as compared to non-disabled peers.

98.     Plaintiff is "otherwise qualified" in that he was able to meet all Revere's requirements in spite of his disability, with reasonable accommodation.

99.     Through Revere's acts and omissions, as described above, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination while attending school at Revere all due to his disability.

100.    Revere's actions and omissions, described in detail herein, were committed in bad faith and/or with gross misjudgment.

101.    As a result of Revere's misconduct, Plaintiff suffered damages. Plaintiff seeks an award of compensatory damages, the recovery of reasonable attorney's fees, costs, and expenses, as well as such other relief the Court deems appropriate.

## COUNT THREE
### (Violations of Section 1983 – Plaintiff v. Revere)

102.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if set forth herein.

103.    Section 1983 prohibits a person acting under color of state law from depriving any other person of any rights, privileges or immunities secured by the United States Constitution.

104.    The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that a state actor may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

105.    Plaintiff possessed a constitutionally protected right to a FAPE under the Fourteenth Amendment. Revere's discriminatory acts and other misconduct were committed under color of state law and denied Plaintiff his right to a FAPE in violation of Section 1983 as

well as other pertinent state and federal regulations, including, without limitation, the IDEA, Section 504, and the ADA.

106.　As a direct and proximate result of the discriminatory acts of Revere, Plaintiff suffered, and continues to suffer, extreme and irreparable damage, including, without limitation, emotional distress, anxiety, depression, post-traumatic stress, damage to his reputation, as well as other non-economic losses, including those losses incurred by the Lis on behalf of Plaintiff.

107.　Revere's discriminatory acts, including its failure to follow, apply, or enforce laws, policies, procedures, customs, or practices required by state and federal law rises to the level of willfulness and/or deliberate indifference to the rights of Plaintiff and to the foreseeable harms caused therefrom.

108.　Accordingly, for Revere's violations of Section 1983, Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees and costs, and any other relief that is equitable and just.

## COUNT FOUR
### (Loss of Consortium – Lis v. Revere)

109.　Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

110.　Revere's discriminatory actions and other misconduct, described herein, directly and proximately harmed Plaintiff while he was a minor.

111.　Due to the harm suffered by the Plaintiff, the Lis also suffered damages, including significant out-of-pocket costs and expenses related to Plaintiff's medical treatment as well as the provision of educational and other support services that Revere failed to provide to Plaintiff. The Lis also incurred significant legal expenses on behalf of Plaintiff pertaining to the IDEA, Section 504, and ADA claims described herein.

112.    The Lis also suffered harm due to the lost filial consortium, including, without limitation, loss of affection, love, and companionship due to the injuries suffered by Plaintiff as a result of Revere's discriminatory acts.

113.    Accordingly, the Lis seek compensatory damages, punitive damages, attorney's fees and costs, and any other relief that is equitable and just.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief against Defendant as follows:

A.    That the Court enter judgment on all claims in Plaintiffs' favor and against Defendant;

B.    That the Court award to Plaintiffs compensatory, punitive, consequential, exemplary, and other damages, in amounts determined by the finder of fact;

C.    That the Court award Plaintiffs their expenses and costs, including all reasonable attorneys' fees, expert witness fees and any other costs as the prevailing party in this action and as provided by law;

D.    For an order granting Plaintiff pre-judgment and post-judgment interest; and

E.    For an order granting Plaintiff all other and further relief to which they are entitled at law or in equity, which the Court deems appropriate.

Respectfully submitted,

**BRENNAN MANNA & DIAMOND, LLC**

*/s/ Kyle A. Johnson*
Kyle A. Johnson (0091050)
Mathew E. Doney (0093845)
75 East Market Street
Akron, Ohio 44308
(330) 253-5060 / Fax: (330) 374-7375
kajohnson@bmdllc.com
medoney@bmdllc.com
*Counsel for Plaintiff*

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable by the maximum number of jurors permitted by law.

Respectfully submitted,

*/s/ Kyle A. Johnson*

Kyle A. Johnson (0091050)
*Counsel for Plaintiff*

4890-0878-9296, v. 4